## HENRY LEVIS v. LOCHIEL I. & S. WORKS.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS OF DAUPHIN COUNTY.

Argued June 3, 1889—Decided June 28, 1889.

(a) Plaintiff sold defendant certain old iron rails, guaranteeing a certain freight rate, the rails being retained in the control of plaintiff as security for notes given, with authority to sell the iron if the notes were not paid.

(b) The freight rate paid by defendant was in excess of that guaranteed, and defendant gave to plaintiff an order to pay the excess to a creditor of defendant. The notes being unpaid, plaintiff sold the rails, and was about to deliver, when some of them were taken by defendant.

1. On the trial of a replevin brought by plaintiff for the rails taken, the question being whether the defendant had fully paid for the rails and then owned them, the plaintiff was entitled to credit for the freight excess he had paid to defendant's creditor, though paid after the suit was begun, and this, though there was evidence that plaintiff, prior to the bringing of the suit, had stated that he had not then paid the freight excess, as he was holding it as a credit on the margins for the iron.

Before PAXSON, C. J., GREEN, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 7 May Term 1889, Sup. Ct.; court below, No. 453 September Term 1887, C. P.

On September 9, 1887, Henry Levis, trading as Henry Levis & Co., brought replevin for 475 pieces of old iron rails, against the Lochiel Iron and Steel Works. The defendant gave bond and retained the iron, subsequently pleading non cepit and property. Issue.

At the trial on May 17, 1888, it appeared that in 1887 the defendant had purchased from the plaintiff about 1079 tons of old iron rails, paying in cash about $3,400, and giving its notes payable on demand for the balance, amounting to $24,850.05. The iron was shipped to plaintiff's agent and retained by him as collateral security for the payment of the notes. The defendant paid $3,000 on the notes, and received about 125 tons of the iron rails. In August or September, 1887, the plaintiff demanded payment of the balance due on the notes, which was not made. Thereupon the plaintiff, under authority contained in the notes, proceeded to sell the iron in order to obtain payment of the money due thereon. In attempting to deliver the iron sold, plaintiff was compelled to cross defendant's premises, when 475 pieces of the iron were seized by the defendant, who claimed that they had not received the quantity of iron paid for.

At the conclusion of the testimony the court charged the jury as follows:

Although a good deal of time has been consumed in the trial of this case, it is in reality within a rather narrow compass. It is in form an action of replevin. In reality and substance it is an action to recover a balance claimed to be due on certain notes, and the substantial question in the case is, what amount, if any, is due to the holder of these notes.

The notes have been given in evidence and you will have them with you when you retire to your room. From these notes, and the testimony in the case, it appears that the plaintiffs sold to the defendants certain iron, for which the defendants paid a comparatively small amount of the price in cash, and gave their notes for the balance, and in those notes they provide that the plaintiffs are to hold the iron so sold as collateral security for the payment of the notes. All that appears by the facts and the testimony, and practically is not in dispute.

Part of that iron so held was taken out of the possession of the plaintiffs, without their consent, by the defendants. You

have heard detailed by the witnesses the manner in which it was taken, and we do not intend to go into that. It is comparatively of little importance. It cannot be controverted that the iron was taken without the consent of the plaintiffs. The plaintiffs complain of the manner in which it was taken, but that is of little consequence in this case. The question for you to determine is, whether, after that iron was taken, there was still as much iron left in possession of the plaintiffs as was worth, at the price fixed upon it, the amount due on the notes, because, whenever the notes were paid the iron belonged to the defendants. If the defendants paid the notes they had a right to take the iron they owned, but it was subject to the right of the plaintiffs to hold it until the debt was paid.

   *     *     *     *     *     *     *     *

You have heard the testimony as to the sale of the iron by the plaintiffs. We have said that the iron belonged to the defendants when it was paid for, as it was only pledged to the plaintiffs. Part of the agreement was that if the notes were not paid when they were due, the plaintiffs had a right to sell the iron and credit the amount. If you believe the testimony that demand was made for the payment of these notes some time before the iron was sold by the plaintiffs, then they had a right to sell it, because the notes upon their face are due on demand; and therefore, if the payment of the notes was demanded they became due, and the condition printed in the notes is that if they are not paid when due, the plaintiffs have a right to sell the iron and credit the proceeds on the notes. The plaintiffs claim that they did that and admit that they did sell the iron, except what the defendants took.

You have heard the testimony as to the amount they sold, and as to the price, and according to the calculation, taken from the testimony of the manager of the plaintiffs, it appears that they sold and gave credit for the iron left in their possession after these eighty-two or eighty-three tons were taken, and applied the proceeds to pay the notes, and that that left a balance due, according to his testimony, of $1,753.78 on, we do not know precisely what date, but it was some time in the fall of 1887; and they claim that amount with interest from the time when the sales were made up to the present date.

The defendants claim that there was more than enough iron

Charge of Court below.

left, outside of what was taken by them, to pay these notes. If we understand correctly they base that claim partly upon the different prices for the iron. Then there is no dispute as to the prices at which the defendants should account for the iron, viz.: twenty-four and twenty-five dollars, for the street rails, and the T rails.

[Part of the agreement between them, it seems, was a contract as to freight, the plaintiffs agreeing that the defendants were only to pay so much per ton for freight, and if the freight charged was over that amount, the plaintiffs were to pay it, or were to collect it from the railroad company and credit it to the defendants; and there is a certain amount of money arising from that source. I believe the defendants claim something like nine hundred dollars. The plaintiffs' testimony, as we understand it, was that it was something over seven hundred dollars. The defendants claim to be entitled to credit for that, and the plaintiffs claim that they are not entitled to credit for it, and this is one of the questions to be determined. It appears that some time in April, 1887, an order or letter was directed to the plaintiffs by the defendants, in which they requested the plaintiffs to pay whatever was received from the railroad company to certain other parties. There is nothing on that order to show that it was accepted. There is some evidence in the case that afterwards, in July, one of the plaintiffs was asked whether he had paid that money to the third party, and he said he had not, and that he was holding it as a credit on these margins for the iron. It is testified to by the manager of the plaintiffs that after he received the money from the railroad company he did pay it over to that third party, and the defendants now claim that as he did not pay it over when the order was sent to him, or for so long a time afterwards, and as he said he was holding it on account of this iron transaction, therefore he is not entitled to credit for it in this cause. We do not think the mere fact of the giving of that order in itself would make the plaintiffs in this case liable to the third party, or would entitle them to a credit in this case, if that were all that was in it. But there is nothing in the way of the jury determining this question, upon the fair rights and equities of the parties. The defendants claim that their rights were fixed on the day they took the iron. But that taking was unlawful in itself,

and could not fix any rights; the defendants could not put the plaintiffs in any worse position by doing that unlawful act, than they were in before; and if it would have been right and fair for the defendants to give credit for that payment before this suit was brought, it is right for the jury to give credit for it now.][1] The objection to giving credit for the payment is a strictly technical objection, if in equity it ought to be given.

[You are to determine, however, whether that money was actually paid to the third party, the Rock Hill Iron Company. If the money was not paid, if it has not been paid, and if it is still in the possession of the plaintiffs, then they are bound to give credit for it on these notes. But if it be a fact that the plaintiffs did pay it over, in the absence of any positive recall of that order on the part of the defendants, then defendants' debt to the third party is paid; and if the defendants' debt to the third party has actually been paid by the plaintiffs, there is no legal rule that would prevent the plaintiffs from getting the benefit of that payment in this action. The manager of the plaintiffs testified that it was paid. When he was cross-examined on that point he said he had not seen it paid, but had seen the stub of the check that was drawn for its payment, and had seen the receipt the third party had given for the payment. That is all the evidence of this payment before us, and that is some evidence of payment. The witness being the manager or business man of the plaintiff, is competent to testify as he did. If the jury is satisfied that it is paid, then it ought not to go as a credit on these notes, because it went to pay a debt of the defendants, and if the plaintiffs are charged with it here they would have to pay it twice. You are to determine how that matter is; whether or not the money was paid to the third party; and if it was, that amount cannot be credited on these notes.][2]

\*      \*      \*      \*      \*      \*      \*      \*

Unless, then, you think the defendants behaved very badly and took this iron under circumstances of some violent outrage, then your verdict should not charge them for more than the value of the iron. It should be for the amount unpaid, and if you find that the amount is paid in full, then your verdict will, of course, be for the defendants.

The defendants ask us to charge as follows:

### Charge of Court below.

1. The rights of the parties to this action were fixed at the time of the bringing of the suit, September 9, 1887 ; and if the jury believe that the plaintiff declared to the defendants in July, 1887, that he had not then paid the Rockhill Iron Company claim out of the freights, but was holding that money as additional security for margins, this was a refusal to accept the defendants' order to pay, given in April, 1887, and the payment of the order in April, 1888, does not entitle the plaintiff to a credit in this suit for the money so paid.

Answer: This is refused. We have instructed you about that.[3]

2. That there is no evidence from which the jury can find that any money was paid to the Rockhill Iron Company on account of the defendant.

Answer: That is also refused, for the reason we have given in the general charge.[4]

The jury returned a verdict in favor of the plaintiff for $1,935.96. A rule for a new trial having been granted, on June 8, 1888, the court ordered that "if plaintiffs file a remittitur of the sum of $193.65* within ten days from the filing of this opinion, judgment to be entered on the verdict as so reduced on payment of jury fee ; otherwise new trial to be granted." A remittitur having been duly filed, judgment on the verdict was entered on June 15, 1888.

Thereupon the defendant took this writ, assigning as error:

1, 2. The portions of the charge included in [ ][1] [2]

3, 4. The answers to defendant's points.[3] [4]

5. [Omitted, see opinion of the court.]

*Mr. Edwin W. Jackson* (with him *Mr. Francis Jordan*), for appellant.

*Mr. S. J. M. McCarrell* and *Mr. L. D. Gilbert* (with them *Mr. John H. Weiss* and *Mr. James Scarlet*), for the appellee.

PER CURIAM:

The first four assignments allege error in the charge of the

---

* The amount of this remittitur was just the difference between the freight rebate $964.53, and the amount actually paid the Rock Hill Iron Company, viz., $770.88.

court. A careful examination of the whole charge, in connection with the portions embraced in the assignments, fails to disclose error. The questions of fact involved in the case were fully and fairly submitted to the jury.

The fifth assignment alleges error in the admission of testimony. This assignment is not in compliance with the rule of court, and will not be discussed.

Judgment affirmed.